IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**MICHAEL BURGESS**                                                                                    **PLAINTIFF**

V.                                              4:23CV00895 JM

**MASSACHUSETTS MUTUAL LIFE
INSURANCE COMPANY and
RUSS VANDERSTEEG**                                                                        **DEFENDANTS**

## ORDER

Pending are motions for summary judgment filed by the Defendants. The motions have been fully briefed and are ripe for review. For the reasons stated below, Defendant Massachusetts Mutual Life Insurance Company's ("Mass Mutual") motion is granted as to Plaintiff's ADEA claim and the Court declines supplemental jurisdiction of the state law claims. Since there is no federal claim against Defendant Russ Vandersteeg ("Vandersteeg"), the Court declines to exercise supplemental jurisdiction of the state claims against him. The claims against him are dismissed without prejudice.

I.      Facts

On July 2, 2016, Plaintiff entered a Financial Services Representative Contract ("FSRC") with Mass Mutual. (FSRC, ECF No. 48-1 at p. 58). Under the FSRC, Plaintiff had authority to sell insurance policies and annuity contracts issued by Mass Mutual and to provide service to the owners of these products. *Id.* Under the FSRC, Plaintiff agreed that his principal business would be the sale and servicing of Mass Mutual products, but he was not required to sell Mass Mutual products exclusively. *Id.*

On January 1, 2017, Mass Mutual assigned its interest in the FSRC to Russ Vandersteeg making him the Successor General Agent under the agreement. (ECF No. 48-1 at p. 99).

Pursuant to the assignment, Vandersteeg contracted with agents to solicit and represent Mass Mutual in the sale of Mass Mutual products. (Vandersteeg Dec., ECF No. 43-6). Vandersteeg essentially supervised Plaintiff and other financial advisors like Plaintiff who sold and serviced Mass Mutual products within a specific region.

From the beginning Plaintiff felt that he didn't fit into the age group that Mass Mutual was looking for in their agents. (Pl's Dep., ECF No. 51-1 at 34:23-25). Plaintiff claims that during a Mass Mutual presentation, a Mass Mutual vice president "made it known that our average age of – of reps were in excess of 65 years old." *Id.* at 34:21-23. Plaintiff stated, "They just mentioned that the age of – a lot of the people would be at the age of retiring and they needed newer people." *Id.* at 35:7-8. Plaintiff felt like the gist of the meeting was succession planning. *Id.*

Plaintiff also felt that Vandersteeg did not like him. He claims that Vandersteeg mistreated him by putting other employees before him even though Plaintiff was a top-producing agent for Mass Mutual in Arkansas and brought millions of dollars' worth of business to Mass Mutual. As an example, Plaintiff noted that for a few months after Vandersteeg became the General Agent, he miscategorized Plaintiff in multi-production reports as having less than five (5) years' experience. This report was used on camera in weekly Zoom meetings showing all agents' sales production. Plaintiff claims that Vandersteeg also left Plaintiff's name off a hotel reservation for a top producers' meeting and when Plaintiff arrived, he didn't have a place to stay. *Id.* at 126:15-127:8. On another occasion, there was a sales contest with a new product called NX Selectra. At the end of the contest, the top three sellers of NX Selectra were listed. According to Plaintiff, he was the number one seller, but he was left off the list by Vandersteeg because Plaintiff "didn't sell that product." *Id.* at 126:9-14. Plaintiff considered this to be a pattern of misconduct by

Vandersteeg. (Pl's Dep., ECF No. 51-1 at 126:2-3). However, Plaintiff did not complain about Vandersteeg to anyone at Mass Mutual. *Id.* at 39:8-11.

Plaintiff testified that during his last two annual reviews Vandersteeg commented, "Mike, at your age, and if you were to die, I don't know what I'm going to do." *Id.* at 56:19-25. Plaintiff explained that Vandersteeg's comments were made following Plaintiff's hospitalization for COVID. Plaintiff claims Vandersteeg tried to get Plaintiff to share his business with one of the new employees that Vandersteeg hired. As a courtesy, Plaintiff would allow the young employee to come into his office because they were new or because they were local. *Id.* at 57:2-9. Plaintiff did not allow them to stay because they didn't know or care about his clients and had different attitudes that made the sale totally different with them. *Id.* at 57:9-22.

Ultimately Plaintiff submitted his letter of resignation in November 2021 because of the way Vandersteeg treated Plaintiff "differently due to his age, namely, by: (i) at least one age-based comment, (ii) a pattern of exclusion from events and awards, and (iii) Vandersteeg's efforts to force Plaintiff to split clients and commissions with much younger agents." *Id.* at 56:15-57:21, 123:3-127:22, 57:2-21, 103:21-104:8. Before Plaintiff resigned, he provided Mass Mutual via Vandersteeg with an opportunity to work out the issues. (Pl's Dep., ECF No. 51-1 at 151:4-9; Vandersteeg Tr., ECF No. 51-2 at 36:17-24). Vandersteeg attempted to convince Plaintiff through negotiation and inducements to continue working for Mass Mutual. (Pl's Dep., ECF No. 44-1 at 44:19-24. He offered to pay for Plaintiff's office repairs and new signage. *Id.* at 45:4-12. When Plaintiff asked Vandersteeg "[w]here he had been for these past years," Vandersteeg told Plaintiff he would do better. *Id*. at 45:13-20. "I'll do whatever you need." *Id.* at 45:22. Plaintiff stated that it just wasn't good enough. *Id.* at 45:23.

3

During these negotiations, Vandersteeg told Plaintiff that if he chose to resign, Plaintiff would be able to keep and service his Mass Mutual clients and contracts. Vandersteeg explained that he believed Plaintiff could have a nonregistered brokerage contract with Mass Mutual even if he resigned from Mass Mutual and he told Plaintiff so. However, immediately after that discussion, Vandersteeg checked the information with Mass Mutual and discovered he was incorrect. Vandersteeg's assistant informed Plaintiff that Mass Mutual determined that he would lose his "registered trails" income if he changed broker-dealers, and he would not be given a nonregistered broker contract through Vandersteeg.

Plaintiff also alleges that after he resigned Vandersteeg and other Mass Mutual representatives informed Plaintiff's clients that Plaintiff had retired. Plaintiff claims that Vandersteeg knew that Plaintiff had not retired and only made these statements to retain Plaintiff's clients and his business.

Plaintiff brings this suit against Mass Mutual for violation of the Age Discrimination in Employment Act ("ADEA") and against both Mass Mutual and Vandersteeg for state law claims of tortious interference with a contract or business expectancy, fraud, and promissory estoppel. Plaintiff alleges that he was subject to adverse employment actions, including harassment and a refusal to allow him to retain a Mass Mutual Broker Contract. Plaintiff contends that similarly situated younger representatives were not harassed and were allowed to retain their Mass Mutual Broker Contracts upon separation from employment. Plaintiff received a EEOC Notice of Right to Sue within ninety (90) days of filing this action.

Defendants filed a motion for summary judgment arguing that Mass Mutual was not Plaintiff's employer for purposes of the ADEA and Plaintiff has not proven that he experienced any discriminatory conduct or adverse employment action based on his age.

II.       Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, [to] point out to the District Court, that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent s burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the

5

outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

    III.    <u>Analysis</u>

The Court finds it unnecessary to determine whether Plaintiff was an employee of Mass Mutual or whether the actions of Vandersteeg can be imputed to Mass Mutual because Plaintiff has failed to prove that he suffered an adverse employment action. The ADEA forbids employers from taking adverse employment actions against employees because of their age. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136 (8th Cir. 2006) (citing 29 U.S.C. § 623(a)(1)). To prevail on his age discrimination claim, Plaintiff must prove he suffered an adverse employment action. "'An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.'" *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007) (quoting *Wedow v. City of Kan. City, Mo*., 442 F.3d 661, 671 (8th Cir. 2006)). "[T]o be adverse the action need not always involve termination or even a decrease in benefits or pay. However, not everything that makes an employee unhappy is an actionable adverse action." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015) (internal quotation omitted).

Plaintiff bases his ADEA claim on at least one age-based comment, a pattern of exclusion from events and awards, and efforts to force him to split clients and commissions with younger employees. Plaintiff admits that the age-related comments were related to succession planning and questions from Vandersteeg about what Vandersteeg would do with Plaintiff's business if Plaintiff passed away. The inquiries did not result in tangible changes in Plaintiff's working conditions. The Eighth Circuit has held that "[r]easonable inquiries into an employee's retirement plans do not permit an inference of age discrimination. ..." *Betz v. Chertoff*, 578 F.3d 929, 934 (8th Cir. 2009) (quoting *Lewis v. St. Cloud Univ*., 467 F.3d at 1137 (internal quotation marks and

6

citation omitted); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 887 (8th Cir. 2016); ("Reasonable inquiries into retirement are not inherently discriminatory. …"). Vandersteeg's concern over Plaintiff's health and business plan were not unreasonable or excessive particularly after Plaintiff's hospitalization for COVID during the pandemic.

While Vandersteeg's failure to acknowledge Plaintiff's sales awards and his failure to make reservations for Plaintiff at company meetings may have been disrespectful to Plaintiff, they did not affect the terms and working conditions of his employment. As Plaintiff admits he was not forced to allow younger sales representatives to work in his office or split his commissions and there is no evidence or inference that these actions were taken because of Plaintiff's age.

Plaintiff alleges that the Defendants' refusal to allow him to retain a Mass Mutual Broker Contract was also an adverse employment action. However, Plaintiff had already notified Vandersteeg of his intention to terminate his contract prior to learning that he could not retain his Mass Mutual Broker Contract. Plaintiff resigned in spite of the Defendants' refusal, not as a result of it. Further, there is no evidence in the record that the Defendants allowed similarly situated younger employees to retain their Broker Contract after separation of employment.

To the extent that Plaintiff claims he was constructively discharged based on the alleged harassment, he must show that a reasonable person would have found his working conditions intolerable, and that Mass Mutual and/or Vandersteeg intended to make him resign or, at a minimum, that his resignation was reasonably foreseeable given the conditions under which he was working. *Betz*, 578 F.3d at 936 (citing *Reedy v. Quebecor Printing Eagle, Inc.*, 333 F.3d 906, 910 (8th Cir. 2003)). "The intolerability of working conditions is judged by an objective standard, not the employee's subjective feelings; the question is whether working conditions

were rendered so objectionable that a reasonable person would have deemed resignation the only plausible alternative." *Tatom v. Georgia–Pacific Corp.*, 228 F.3d 926, 932 (8th Cir. 2000). The Court finds that Plaintiff did not demonstrate that his working conditions were objectively intolerable. As stated, there is no evidence in the record that he was subjected to any harassment based on his age. Plaintiff has not proven that Mass Mutual or Vandersteeg intended to make him resign. In fact, Vandersteeg actively tried to change Plaintiff's mind about separating from Mass Mutual. He offered to pay for repairs to Plaintiff's office building, buy a new sign for the office, and do a better job supervising Plaintiff in the future, if he would stay. Stray comments by Vandersteeg about succession planning and opportunities to mentor younger employees does not rise to the level of constructive discharge in this circuit. *See Betz*, 578 F.3d 936 (8th Cir. 2009) ("In a variety of cases, this Court has held that [even] such things as loss of supervisory responsibilities, a feeling of being unfairly criticized, dissatisfaction with work assignments, and loss of pay are insufficient to constitute a constructive discharge.")

IV.     Conclusion

For these reasons, Defendant Mass Mutual's motion (ECF No. 42) is GRANTED as to Plaintiff's ADEA claim and the Court declines supplemental jurisdiction of the state law claims. Since there is no federal claim against Defendant Vandersteeg, the Court declines to exercise supplemental jurisdiction of the state claims against him. The claims against him are dismissed without prejudice. His motion for summary judgment (ECF No. 45) is MOOT. All other pending motions (ECF Nos. 66, 69-73, 75) are also MOOT. The Clerk is directed to close the case.

IT IS SO ORDERED this 23rd day of July, 2025.

_____
James M. Moody Jr.
United States District Judge